(11 Misc. Rep. 653.)

### BARTLETT v. GOODRICH et al.

(Supreme Court, Special Term, New York County.   April, 1895.)

PARTNERSHIP—FIRM'S ASSETS—LIFE INSURANCE.
A member of a firm who had contributed all the capital took out policies on his life, and paid the premiums out of the firm funds.   He assigned the policies, on certain conditions, to his copartners.   Afterwards they were reassigned to him, without condition.   Another policy taken out by him later, the premiums on which were also paid out of the firm funds, was not assigned.   At the time of such transactions, the firm was solvent, and there was a large balance to the credit of the insured on the books of the firm.   *Held* that, though premiums may have been paid out of the apparent assets of the firm after it had become insolvent, the proceeds of the policies were the individual assets of the insured, as between his individual creditors and the firm creditors.

Action by Maria H. N. Bartlett, as executrix of the will of Edward B. Bartlett, deceased, against William W. Goodrich, as assignee, and others, on life insurance policies.   Judgment for plaintiff.

Frederic A. Ward, George W. Wingate, and Nichols & Bacon, for plaintiff.

William G. Choate and John A. Deady, for defendant Goodrich, assignee.

RUSSELL, J.   The question to be solved in this case is whether the individual creditors of Edward B. Bartlett, deceased, or the copartnership creditors of his firm, shall receive the proceeds of insurances upon Bartlett's life to the amount of about $80,000, or whether those insurances shall be paid to the partnership creditors of the firm composed of the deceased, Henry E. Nitchie, and Albert C. Woodruff.   These insurance moneys were collected by the plaintiff, as executrix of the deceased, but are now held by the defendant Goodrich, as assignee of the firm and the individual partners, paid over by the widow to the assignee upon his advice, he standing in the relation of counsel to her, having been also counsel for her deceased husband.   The advice of Mr. Goodrich to the executrix was beyond doubt honestly given, that the money belonged to the trustee of the firm, instead of to the trustee of the deceased partner, and all technical objections as to the right of recovery upon the merits are waived if, in fact and in law, the widow should have retained the money to pay out to the creditors of her deceased husband in the due course of the execution of her trust as executrix. This sum of $80,000 is the balance remaining from insurance moneys collected by the executrix to the amount of $100,000, after deducting the premiums paid out of the apparent assets of the firm during the life of the deceased, and which premiums were repaid to the assignee, Goodrich, by Mrs. Bartlett after she received the insurance moneys of $100,000; the assignee at that time advising the return of the premiums, and not claiming the insurance fund.

The firm of E. B. Bartlett & Co., composed of Bartlett, Woodruff, and Nitchie, was formed on the 1st day of May, 1885, by a written agreement, to carry on the business in Brooklyn of warehousing

and storage, by which Bartlett was to receive 58, Woodruff 28, and Nitchie 14 per cent. of the profits. All of the capital was contributed by Bartlett, Woodruff and Nitchie furnishing no capital whatever during the course of the partnership. This partnership was continued in various ways until the death of Bartlett, which took place on the 24th day of May, 1894, and shortly afterwards, on the 7th of June, 1894, Woodruff and Nitchie made a general assignment for the benefit of creditors, as surviving partners and also individually, to the defendant Goodrich. March 1, 1887, Bartlett took out three life policies in the Equitable Company for $25,000 each, one in the State Mutual for $10,000, and one in the Berkshire Life Company for $15,000. On the 7th of March, 1887, he executed five assignments, covering the policies, to Woodruff and Nitchie, in equal shares to each, if the partnership should be in existence when the policy became a claim, and the share of either not then surviving to revert to the legal representatives of the insured, and, in case of the dissolution of the copartnership, the whole became payable to the legal representatives of the insured. On the 15th day of July, 1890, Nitchie and Woodruff reassigned to Bartlett those insurance policies, except one of the $25,000 policies in the Equitable Company, which had been surrendered, and a paid-up policy taken for $3,750, payable to Woodruff and Nitchie, which policy was collected by them after Bartlett's death. On the 1st of March, 1890, Bartlett took out another policy in the Equitable for $25,000, which was never assigned by him to any one, and which was payable to his executors, administrators, or assigns. On the death of Edward B. Bartlett, the legal title to the funds arising frcm the $100,000 of life insurance policies confessedly appeared to be in the executrix. Is there in this case sufficient evidence that the real title or the equitable title was in the copartnership so that the copartnership creditors may claim the benefit, to the exclusion of the individual creditors of Bartlett, both estates being beyond doubt insolvent?

The defendant Goodrich relies upon the fact of the original assignment of four of the policies to Woodruff and Nitchie, upon the fact of the premiums being paid out of the assets of the firm and credited to a special insurance account, and upon various declarations of Bartlett, made mainly prior to the reassignments to him, as evidence that Bartlett held the policies, even after the reassignment to him, and the new policy taken from the Equitable, as trustee for the benefit of the firm. The claim is an equitable one, to be judged of by equitable considerations. In July, 1890, it does not appear that the firm was insolvent, and it may be presumed that the disastrous panic of 1893 brought about the insolvency which existed at the time of the death of Edward B. Bartlett. Therefore, when the reassignment was made, there was no equity whatever on the part of the copartnership creditors which prevented the valid transfer of those policies back to the insured himself, and the facts disclose ample reason on his part for desiring the title to be solely in himself. He contributed all of the capital which the firm had, and from a period soon after the date of taking out the policies his credit balance on the books of the firm ranged from $174,695.86, in 1888, to

$127,955, at the date of his death in 1894. The balance struck after the reassignments, on the books of the company, showed his credit balance to be $172,900, and at that date Woodruff's debit balance was $49,000, and Nitchie's $4,122. Woodruff's debit balance ranged during the period mentioned—from 1887 to 1894—from $33,500 to $58,000, and Nitchie's from $10,500 to $4,825. Had Bartlett died at the date of the reassignments, and his estate been charged with $100,000 collected and all of the primiums paid, a large balance would still have been left in his favor, and the other partners would still be largely indebted to the firm. The same result would have been attained had such charges been made at the time Bartlett died, on the 24th day of May, 1894. There never was, then, a time during the existence of the policies that the deceased was not entitled to demand the amount they called for over and above the amount of premiums, so far as any equities existed between him and the surviving partners. Nor does the continued payment of the premiums out of the apparent assets of the firm change this result as between these three individuals. He was entitled to draw the amount of those premiums, according to his accounts with the firm, and the fact that they were not charged to him, but kept in a special insurance account, does not overthrow the equities arising, for a matter of mere bookkeeping cannot destroy the substance of a transaction. Does the insolvency of the firm alter the equities so that a claim, which could not be successfully maintained by the partners, if solvent, to the proceeds of the insurance policies, would be changed in its equitable force by insolvency of the firm? How can the copartnership creditors derive a superior equity as against other innocent losers, who stand as creditors of the individual whose death created a loss to them of a personal capacity on the part of the debtor to continue his power to accumulate property, and by which loss the fund springs into being now contended for? It is also urged by the counsel for the assignee that various declarations of Bartlett show an intent on his part that the insurance fund should be for the benefit of the partnership, and that the drawing of the premiums from the nominal assets of the firm after the assignments partially shows a continued evidence of such intent. But the matter of intent is not determinative, except so far as it is consummated by action, where contract rights are affected. The continued payments of the premiums in the manner stated does not of itself constitute the insured a trustee for the firm where the payments were upon policies of his own life, and where the continued status of the accounts between him and the other partners showed his right to draw the amount of the premiums from the assets of the firm. Especially is this the case where four of the policies, originally payable under certain circumstances to the two other partners, had been reassigned absolutely to himself, and in the other policy the other partners never had any legal interest. I am of the opinion that the various circumstances attending the carrying of the policies of life insurance referred to do not change the ownership apparently existing in the executrix at the time of the death of Edward B. Bartlett. It is unnecessary for

me to consider the question of the right of the executrix to the premiums paid over to the assignee, for no claim is here made for those premiums. The surviving partners could not have claimed the estate should pay, had the copartnership remained solvent, in adjusting the equities between the three members of the firm; but I understand the counsel for the executrix do not ask their repayment. Judgment therefore is directed for the plaintiff for the repayment of the amount of the insurance moneys, less the premiums, with costs to the plaintiffs and to the defendant Goodrich, payable out of the fund.